MORRISON v. METROPOLITAN EL. RY. CO. et al.

(Supreme Court, Appellate Division, Second Department. March 13, 1900.)

STREET RAILWAYS—EMINENT DOMAIN—USE OF HIGHWAY—INJURY TO ABUTTING PROPERTY—DAMAGES—EVIDENCE.

   In an action for damages for injuries sustained to abutting property from the use of a street by an elevated railway, the expert testimony of both plaintiff and defendant showed that the difference between the increase of the fee value of plaintiff's property and that of other property in the locality, not affected by said railway, during the period that such railway had been in operation, was from 50 to 60 per cent., and that the annual rental value bore the relation to the fee value of about 7 per cent. *Held*, that a judgment for damages in less than 10 per cent. of the estimated fee value of the property before the construction of the railway, and for 7 per cent. of that amount annually for losses in the rental value of the property, was not excessive.

Appeal from special term, New York county.

Actions by Edward A. Morrison against the Metropolitan Elevated Railway Company and the Manhattan Railway Company to recover damages to plaintiff's property from the use of the street by defendants for an elevated railway. From a judgment for plaintiff, defendants appeal. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, HATCH, WOODWARD, and HIRSCHBERG, JJ.

   Edward C. James (Frederick Allis, on the brief), for appellants.
   Stanley W. Dexter, for respondent.

HIRSCHBERG, J. This is an appeal by the defendants from judgments in two actions between the same parties, separate as to pleadings and property involved, but tried together and argued together in this court. The actions are equitable, for the recovery of fee and rental damages, with an injunction in the alternative. One action involves the property on the west side of Broadway (formerly Sixth avenue), in the borough of Manhattan, north of the Manhattan Theater on the block between Thirty-Second and Thirty-Third streets; and the other involves the property on the south side of said theater on that block. In the first-mentioned action the court awarded the sum of $12,500 as the fee damage, and the sum of $11,600 for rental damage during a period of about thirteen years and a half. In the second-mentioned action the award was $16,350 for fee damage, and $15,450 rental damage during the same period. The appellants make no point based on erroneous ruling. They insist that the damages awarded are excessive, and that they were awarded without regard to the character of the property and the uses to which it has been put. A study of the cases justifies neither criticism. The property is located in the very heart of metropolitan life and growth, but for some reason the progress (as distinguished from mere rise in value) which is noted all around the locality, with the exception of Sixth avenue, has been stayed at this point, and this point on its face most promising, being the junction of Broadway with Sixth avenue, and on the edge of the cross-town tide through Thirty-Fourth street. Yet all the witnesses agree that the property has not advanced with the times, if their testimony be carefully analyzed. The plaintiff examined one expert (Martine), and the defendants two (Meyer and Da Cuhna), and they all compared the values of 1873 with 1898, as contrasted with the general rise of property during that period and in that neighborhood. Martine estimated the value of the property north of the Manhattan Theater in 1873 at $143,000, and in 1898 at $228,-500. He testified that during the period named property in that vicinity had doubled in value, and on Broadway, from Thirty-Fourth street to Forty-Second street, it had increased from 100 to 130 per cent. Allowing 100 per cent. to be the normal increase, and doubling his estimate of $143,000 for 1873, we have $286,000; and, if $228,500 is the correct present value, the difference would represent a fee damage of $57,500. The court awarded $12,500. As to the present value, the plaintiff's estimate is $250,000. Meyer places the value in 1873 at $165,000, and the present value at $330,000, an increase of just 100 per cent.; but he puts the normal increase in this very locality at 150 per cent. Da Cuhna estimates the value in 1873 at $165,000, and in 1898 at $325,000, but he estimates the increase on gold values at 200 per cent. They all agree that the rental value bears the relation to fee value of about 7 per cent. (from 6½ to 8), and I therefore cannot see why the award of $12,500 fee value, with 7 per cent. on that amount per annum, viz. $875, for 13½ years, viz. $11,712.50, or the rental value awarded by the court, $11,600, is excessive on the evidence. As to the property south of the theater, the same ratio prevails. Martine's figures are for 1873

$138,864, and for 1898 $182,688; and if the development of the city would have doubled the property in value without the elevated road, there is a fee discrepancy of $95,040. The court awarded $16,550. Meyer's figures are for 1873 $79,500, and for 1898 $180,000, which would leave a difference on his ratio of increase of $18,750. Da Cuhna's figures are for 1873 $99,000, and for 1898 $195,000. His estimate of increase is based on former gold values, but, as he puts increases as high as 700 per cent. in some Sixth avenue localities, the court would have been justified on his figures in assuming that this property had not increased during the 15 years in its fair proportion to the favorable surroundings. The award of $16,550 of fee damage is accompanied by rental damage of $15,450, and at 7 per cent. on the fee damage it would be $1,158.50 a year, or, for the 13½ years, $15,639.75. The awards are justified by the general interference with light and access and the other well-known disagreeable concomitants attending the construction and operation of the elevated road, as against whatever beneficial results may have followed from such construction and operation in the building up of the city or of the neighborhood. Independently of the road, values have advanced by reason of the increase of population and wealth and the demands of constantly increasing trade and commerce. The wonderful progress which the last quarter of a century has seen in the half mile on Sixth avenue below Twenty-Third street, contrasted with the moderate development exhibited in the half mile above Twenty-Third street on that avenue, would seem to indicate that the elevated road alone is neither to be credited on the one hand nor charged upon the other. In view of the favorable location of the property in question, and the figures herein given as the results of the testimony before the learned trial justice, the awards may be regarded as conservative on a just balance of the advantages and disadvantages incident to the operation of the road.

The appellants' counsel, on the argument, insisted that the awards were open to the objection of having been made at so much a running foot front for all the property. The criticism is pointless. Any award is necessarily divisible by the number representing the frontage in feet, and by such division may be made to appear as though so awarded. The difference is marked, however, when the respective awards are taken at their relation to the square feet of the property involved, being, in the one case, as stated in appellants' brief, at the rate of $3.46 per square foot, and in the other at $2.81 per square foot, a difference of about 20 per cent. I recommend affirmance.

Judgments affirmed, with costs. All concur.